May it please the Court, Lisa Chen appearing on behalf of Appellant Rolando Solis. I'd like to reserve three minutes for rebuttal. Proceed. Mr. Solis' trial below, a critical issue was whether or not the shooter acted with premeditation or under the sun heat of passion. Defense counsel's error in closing when he failed to explain the difference between heat of passion as mitigation versus excuse was ineffective assistance of counsel under Strickland. Well, let me ask you this. He probably didn't do the best job ever, but it would appear to me that the instructions were correct. And it would also appear to me that your client's defense at trial was what we call, what is it, soddy, some other dude did it. And so it's always a little bit iffy to argue, my client didn't do it, but if he did do it, then this is how I want you to look at it. So, you know, how do you really, you know, I'm not really sure what the prejudice is there. A couple of things on that point. First, concede that his primary defense that defense counsel chose tactically was misidentification. The problem of when he committed deficient performance and when the cause of prejudice was in the prosecutor's opening when she got up, in her closing, I apologize, when she got up first and she spent substantial amount of time talking about heat of passion, but talking about it as excuse and saying that because a gun was used, heat of passion as an excuse was legally unavailable as a defense. Well, the instructions, if you read them as a whole, don't really say that, though. You don't get to that until, you know, I mean, it talks about, I think you pointed as 8.10, but there's other instructions that you still have to get to before, and if you didn't think that your client did it, you would never even get to that. Yeah. So the point simply is that the prosecutor's closing left the impression that because a gun was used, heat of passion is not available, period, and defense counsel didn't get up and say, well, even though a gun is used, heat of passion can still mitigate and negate malice of forethought. And Your Honor, second point is, as we submitted, you know, very late, and we apologize for that, in the 28J, 8.10, as given by the court, was actually error because it told the jury that they could find, as long as there was commission or attempted commission of an assault with a firearm, that they could find that that equated malice of forethought and that they could automatically find murder, which is incorrect under California law. Can I ask you, what do you want us to do with the argument you've raised in this 28J letter? I take it it could be the basis for a separate IAC claim, right? Right. So argument is that we already make the argument that there was prejudice based on the confusion that was left from the closing argument. You know, the jury was then left with the impression that heat of passion didn't apply, did not preclude deliberation, and there was definitely murder. And so there was already an issue and confusion from whether or not heat of passion could negate malice of forethought, even if a gun was used. Now, that confusion was then compounded by 8.10, where they were told, hey, as long as a gun is used in the killing, that is malice of forethought. And so we're just using the California Supreme case law that we cite in our 28J to say, look, even the California Supreme Court has recognized that an instruction like 8.10 leads confusion for the jury. But I take it there wasn't a separate claim based on that erroneous instruction pressed in either the State courts or in the district court. All right. In the courts below, the claim was that when so there was so there's a separate claim of like, look, we're using this as a support for our argument that there was prejudice. Taken that aside, there were separate claims based on that the petitioner made. So you're not bringing up you're not expecting us to entertain a new and separate grounds on your appeal in a 28J letter. No, no. So just using that as. Because Appellate 101 kind of is against you there. Right. So just using it to say, like, look, another indication of support that the jury was confused and that 8.10 played into the confusion. And I just want to raise that, you know, in the lower court decisions. Did 8.01 play into the confusion or given that, let's assume, erroneous instruction, it wouldn't have mattered what counsel said? Well, so part of it is the instructions were given. And I do understand it's almost a harmless error argument if you accept the premise that the judge's instruction, wrong as it was, was given. It wouldn't have mattered what he argued. Well, the instruction as given was if you use a gun, then there's malice aforethought for murder. He had a chance when he got up in closing, those instructions had already been given, to explain actually, you know, even if a gun is used, you know, heat of passion, which existed in this case, could have also negated malice aforethought and to just kind of counterbalance that instruction and to clarify the confusion, which was both, you know, caused by 8.10 and by the prosecutor's closing beforehand. And the prosecutor said multiple times, you know, if you have heat of – if you have – if you find murder and you find malice aforethought – I mean, I'm sorry. Let me just strike that. If a gun is used in the killing, then – Go a little slower. If a gun is used in the killing in the commission of the crime, then heat of passion as a defense completely is not available. That it was simply inapplicable as a matter of law. And so the jury taking that as this is what the prosecutor has kind of explained to me, how these instructions play out, and then when they get in the jury room and they see the actual jury instruction, 8.1, also says gun is used, negates malice aforethought, you can automatically find murder. I mean, there's nothing defense counsel said, and this is how he was sufficient to counter that or to explain that in any way in his closing, even though he had not one chance during his closing, but the prosecutor in the middle of her rebuttal, after she had already made these arguments multiple times, you know, said I have something I want to put on the record. I'm – you know, maybe the defense counsel forgot something, forgot to really talk about the verdict forms, and I'm going to give you ten more minutes, and he declined. And the reason he declined wasn't because it was tactical. It was because as he admitted to the court, he didn't understand the difference between heat of passion as excuse versus justification enough to actually explain it to the jury during closing. You know, so the jury was left with misleading jury instructions that are potentially erroneous, and these very consistent – Well, so at best you're arguing potentially erroneous, not necessarily – I notice you're sort of taking liberal – a liberal statement of the instruction. It doesn't just say because you have a gun. You have to be during the commission of an – or attempted commission of an assault with a firearm, right? It's not just possession of a gun. Right. I mean, in the facts of the case, the gun was fired, and the gun is, you know, there was a shot fired, and the victim was shot, and that's eventually what causes death. And so, you know, the facts of the case fit what was given erroneously. Well, but it would have to be assault with a firearm. It wouldn't be an accidental discharge or anything, correct? Correct. Correct. What is your single most significant error that the State court committed, and how do we get past the high bar that no reasonable jurist could agree with the State court's conclusion? Well, so, you know, the State court's not finding prejudice based on defense counsel's closing arguments and failure to explain that even if a gun is used, that still negates the malice of forethought, and you can still mitigate murder to manslaughter. Isn't the jury always instructed that statement of counsel is not evidence? Yes, and they're also – And they're basically told, I'm going to tell you what the law is, and you are the judge of the facts, and really whatever these layers say is not evidence. So doesn't that make – if you're claiming things that someone didn't – did or did not say in an argument, isn't that less potent than if it were something that occurred that is actually evidence in the trial? So the instruction was given, but they're under certain circumstances where that perception can be overcome, and that is when, you know, when the likelihood of confusion is high and the jury expresses confusion. Well, wait. That never makes statements of counsel evidence, though. No, no. Oh. So I think the State court acknowledged that the concepts, the distinction between mitigation and excuse is extremely complicated. Even some lawyers, let alone lay jurymen, could be confused, and it's very complicated. And so, you know, we can't disregard completely what the counsel are saying during closing arguments, particularly when the prosecutor makes this statement, and it's a correct statement of law, but it's just very confusing and misleading, and defense counsel fails to clarify that confusion, and there's a misleading jury instruction. And as we can see from the actual jury questions, they were actually confused about, you know, the role between a gun and then how that plays out in terms of finding malice and finding premeditation. Do you have any case that says that any of the jury instructions were wrong? So it's the two Supreme Court cases that we cited in our 28. Which are your best cases? The people versus Ireland, the Supreme Court case. Sorry, California Supreme Court case, saying that. Well, under AEDPA, we're talking U.S. Supreme Court, though, right? Well, and so then it is kind of, it is the, so the U.S. Supreme Court case, then, in best support is in Glover v. United States, where you find that an ineffective assistance of an error by counsel leading to an increased sentence could be prejudicial. An error by counsel could lead to what? An error by counsel that then leads to an increased sentence for the defendant. And so that, that is kind of the constitutional, the Federal right that was at play here and under Strickland, also, you know, the right to effective counsel. And the fact that there was then a, you know, an effective closing argument, as well as the instruction that compounded the confusion. And as you can see in the actual questions that they asked during deliberations, they were, in fact, confused by, you know, both the counsel's closing and compounded by the jury instruction. What was the basis for the California Court of Appeals finding that it was, that it would not have affected the verdict? I thought it was because he was convicted of first degree murder, and therefore it showed that the jury found premeditation, and therefore it wouldn't have mattered. So. What is, what is, what is your response to that? And don't forget we review that under a double differential standard. Right. Differential standard, I'm sorry. So the response is that all the jury verdict reflects is confusion stemmed from the defense's closing argument and confusion from the jury instruction. They thought. Well, but when you find first degree murder, you're finding premeditation and deliberation. So that means you went there with the idea you were going to do it. Well. And that is one way that you can look at the facts in this case. All right. So I'm trying to find the actual. So, I mean, their question asks about 8.10. The question was, the first question, death resulting from commission of a felony, assault using a firearm, does it stand alone? In other words, using instruction 8.10, do we need premeditation? So their confusion was about premeditation. Their second question was clarifying the difference between murder one and murder two. If someone has a gun, is it automatically murder one? Is it automatically premeditation? Is it automatically deliberation? And when you actually turn to the text. What was the answer to that question? It should be, it's, there was, what the jury, I mean, what the trial court did was it reread the instructions including 8.10. What it should have said is just say no. The answer should have been no. Okay. Do you want to reserve the balance of your time? Oh, I do. Thank you for the reminder. All right. Thank you. Good morning. May it please the Court. Justin Riley on behalf of the Warden. As to the 28J letter, I believe Appellant cites to People v. Ireland, which creates a merger doctrine, and then a 2009 expansion, I believe are Appellant's words, of the Ireland merger doctrine. The creation or expansion of this merger doctrine to arguably the facts and circumstances here come five years after trial, almost six years after trial. It would be a little unfair and contrary to Strickland to apply such a change in the law for any reason, especially prejudice. So not to mention there's exhaustion problems. The Ireland merger doctrine was never cited to the state courts for any purpose. The state courts need fair presentation of the claims to inform the only question here, which is the objective reasonableness of the state court's denial. Getting into the mitigation issue. Let me, counsel, let me just skip you ahead. Sure. Let me ask you about the alibi defense. Yes. You would concede that counsel was deficient in not at least interviewing the witness before trial. Right. Actually, we don't. How is that a strategic decision, not to interview the only alibi witness that's going to support his claim that he didn't commit the crime? It wasn't necessarily strategic in that he said I'm going to purposefully not interview this witness. But there was nothing calling for him to interview that witness. Well, except if your whole defense is you didn't, someone else did it. It's misidentification. Wouldn't it, I mean, wouldn't it be really important that someone could put you somewhere else? Absolutely. And he had that person, which was the sister. But if you look at the sister and an ex-girlfriend, you could argue that the ex-girlfriend doesn't even like you anymore. And if she came in and said that you weren't there, that you were with her, I would, you know, if I were arguing the case, I would say this woman doesn't even like him anymore. And she's coming in and saying he was with her. Absolutely. As opposed to the sister, she's his sister from now until eternity. And, of course, a sister is going to lie. Absolutely. So that's kind of shoots down the cumulative and why you shouldn't at least talk to that person and see what they're going to say. If counsel had that information prior to trial, which he didn't, when he was explaining to the trial court why at this late date he was trying to admit the sister's testimony, he rattled off a list of reasons which make it reasonable. You mean the sister's testimony or the ex-girlfriend's testimony? The ex-girlfriend's testimony. Actually, Mr. Solis said that he told his defense lawyer before trial about the ex-girlfriend and that, in fact, I think his family provided contact information for the ex-girlfriend before trial. He did say that, and that was contrary to what counsel said to the trial court. Point me to where counsel said otherwise. I have the excerpt from the ---- I believe it's excerpts of record at 1060 or about. I'll get right to it. I'm sorry. 1160. I'm looking at it, but ---- And I can look it up as well, but I have a summary of the reasons. First of all, he said counsel told the trial court Appellant said he couldn't remember which time period he was staying at the sister's house. Just couldn't remember. So Appellant didn't say anything. That conflicts with what Appellant later tells the State courts that ---- He doesn't. I'm looking at page 1162. Counsel doesn't say that I never knew about this ex-girlfriend until after trial started. He doesn't say that. In fact, he says I acknowledge that I ---- this is information that I guess I could have gotten earlier had I taken the effort, made the effort to interview her before trial. That is one interpretation of what counsel said. Well, just show me. I have it right here. Show me what you're referring to. Okay. 1162. I'm at 1162, line 15. Counsel talking. Toward the middle of the line 15 on line 62. I talked to my client. He couldn't remember where he was during this time. Now, remember, the defense was for this particular week in April of 2001, I was with my sister and my girlfriend 24 hours a day. Counsel was telling the trial court that Appellant couldn't remember where he was during the time of the shooting, the week surrounding the shooting. Also, the sister was getting it wrong. The sister was saying, they came to live with me in May, the wrong time period. So counsel is preparing for trial. He has his Appellant statement that's ---- I'm sorry. He has his client's statement that says, I don't know where I was. And he has the sister's statement that says, yeah, they were living with me in May, a month after or a month of the wrong time period. So the sister finally takes the stand, remembers what went on. Oh, yeah, it was a month before. Well, counsel then is backpedaling. Nobody told me about this. That's why he went out, rushed out, got the interview of the witness, and then tried to present it to the trial court. Some other facts. And you and the government objected. The people objected. Absolutely. I didn't represent the people that objected. I'm just curious how you thought you were prejudiced. How I thought I was? The state. The state preparation, I imagine. I don't know. There was an objection. You disclosed the witness list, and the witness was disclosed after the cutoff, correct? And so then you're saying we don't have a chance to go do that. That being said, though, let's assume that it was error. How do you overcome that? Just what's your best argument as to why it doesn't matter? It doesn't matter. What's your prejudice argument if we find that it was error? I reread the sister's argument. It was the sister's argument or the sister's testimony? I'm sorry, the sister's testimony. I apologize. You're right. I reread the sister's testimony, and the sister was saying 24 hours a day we were with And the prosecutor cross-examined and said all the time. He didn't go to the store. He didn't duck away. He didn't. Nope, 24 hours a day. It's a little incredible. Except when he left with the ex-girlfriend. And that's what the jury was then reasonably expecting here from, oh, now we'll hear from the ex-girlfriend to fill in that missing gap. Absolutely. And if counsel would have known at all, his client and the sister, the whole basis for whether or not he should go out and do more investigation was gone. He didn't have it at all. Appellant said he couldn't remember. The sister said, no, we were living together at a different time period. Appellant and his girlfriend, now ex, had a bad relationship. Counsel, just back up one step. You keep saying that the sister testified about some different time period. Where is that testimony? No, she didn't testify. She told counsel. Counsel relayed to the court that the sister said, Appellant and his girlfriend were living with me in May. In May. The relevant time period was the end of April. Okay. And then just where is the May? I just didn't see any reference to that. Are you talking about lines like 9 through 12 on 1162? Yes. And after her testimony, she came over to counsel and said, I realized for the first time that these events were happening in April, not May. Well, that's when counsel's duty to investigate was triggered. He had no information to go out and do any sort of investigation with the girlfriend. And why would he? They broke up because she thought he was cheating on her. There was going to be bad blood between them. That's how Appellant must have described it to trial counsel, because trial counsel hadn't talked to the girlfriend. Bad blood between them. It doesn't really matter anyway. Her testimony is irrelevant. And so ---- Wait. Yes. That her testimony is irrelevant. Yes. As an alibi witness in a case where he claims it wasn't me. Absolutely. As of the time, trial counsel was starting trial. He had no information that her testimony was relevant at all. If he had talked to her, might he have known? Appellant couldn't remember where he was. Didn't know who he was hanging out with at the time. Okay. I think we're kind of spinning on this one. Okay. Let's talk about the failure to argue mitigation to the jury. Sure. And whether Mr. Solis suffered prejudice as a result of that. What evidence is there? And I don't want your spin on it. I want to know what the evidence was in the record that Mr. Solis acted with malice of forethought, acted with malice required for second-degree murder. What is the evidence in the record? I believe that the State Court of Appeal on the record of appeal found the facts. And the facts that they found were that appellant and the victim met in a yard somewhere, and the victim saw that he recognized appellant from county jail. And so the victim said something, some sort of words that started an altercation, profanity, posturing, that sort of thing. Appellant then took out a gun, said some words of his own, and shot the victim. All right. Does the evidence show that the victim's hands were empty? That's what the State Court of Appeal found the evidence to be. Okay. Is there anything in there that says, I'm going to show you? Was there any evidence to that effect? Absolutely. So is that relevant evidence on malice? Absolutely. And one of the interpretations of the evidence was, I'm going to kill you. I'm going to kill you or I'm going to show you. I believe Flores was the witness who said he heard appellant say, I'm going to kill you and or I'm going to show you. The facts start at Excerpt of Record 48. And the State Court of Appeal found that by page 49, there's no line numbers, but the first full paragraph, his hands were empty, his fists may have been clenched, and appellant said, quote, I'm going to shoot you, end quote, or, quote, I'm going to show you, end quote. Those are the facts that the State Court of Appeal found. They haven't been rebutted. Those show premeditation. As to mitigation, the State Court of Appeal found basically that appellant had two chances at his defense. One would have been the instructions that explained mitigation. And if the jury read the mitigation instructions and saw, you know what, I think this was in the heat of passion, so I'm going to reduce this to manslaughter. The second chance at this defense was when the jury read the premeditation or first degree murder instructions. They read that appellant must have been, and I'm quoting from Excerpt of Record 93, where the State Court of Appeal quoted the College of Construction 8.20. Appellant must have made a cold, calculated judgment, and the decision may be arrived at in a short period of time. To consider a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice, having in mind the consequences, he decides to and does kill. To find appellant guilty of first degree murder, the jury must have followed this instruction. So the first chance was, well, the premeditation instructions. The second chance was when you get to these premeditation and deliberation instructions to find first degree murder, you must necessarily again reject mitigation. So it just 8.10 gets you to malice. It doesn't get you to premeditation and deliberation. It gets you to second degree murder, yes. And they found him guilty of? First degree murder. All right. Are there any other questions? Thank you. Thank you. A couple of quick clarifications based on opposing counsel's argument. First, the evidence on record with Antonio Flores says speak up a little, please. I'm sorry. His statement was I'm going to shoot you or I'm going to show you. He never said I'm going to kill you, and that makes a difference. Also, when opposing counsel was talking about that counsel's duty to investigate was only triggered upon hearing Claudia Solis' testimony and that he had no idea prior to her testimony that the girlfriend could be relevant, I think is wrong under the facts and the law. Under Strickland, counsel has a duty to make a reasonable investigation or make a reasonable decision that makes the particular investigation unnecessary. Almost a year before trial, Mr. Solis was telling his defense team, I have an alibi witness, my former girlfriend. She can testify as to my whereabouts during the day of the shooting. And at that point, that is when the reasonable investigation duty under Strickland would have kicked in. Now, you had some complaint about hearsay statements that came in from the victim. Yes. Wasn't one of the hearsay statements that came in from the victim that someone other than the defendant did it? Right. All right. So that hearsay was good for you, right, and that's why you didn't object to it? Right. All right. So I'm having a hard time on your complaint. I can see a real strategic reason for you got the victim first saying someone else did it and then saying your client did it. I mean, what could be more perfect? I mean, you needed to get – if it's hearsay, it's all hearsay. Okay. And so you want to just pick and choose which hearsay you want to get in. I mean, I see a real strategic call there and a real reason that the defense would want, you know, a dying declaration or some hearsay statement from the victim that someone other than your client did it. Right. The difference between the two identifications from the victim, the first one saying Brewster did it versus the second one. So you just want to get in the first one but not the second one. Right. So the first one falls under numerous hearsay exceptions. You know, it was near the time of when he was shot with spontaneous utterance. It was, you know, he got at the time that he was shot. So the good one is a dying declaration or a spontaneous utterance. The other one is not. The other one is months later, you know, everyone – the doctors are telling him he's doing well, he's doing better. And so at that point when he was questioned and he identified my client as the shooter, he was not under, you know, the eminent cause to believe that he was about to die. And so that exception doesn't apply. And so as a matter of law, you know, yes, you know, the beneficial one to my client comes in and the one where he later identifies him five months later after the shooting would not come in under hearsay and confrontation. All right. Your time has expired. Unless there's other questions from the panel, the matter will stand submitted. Thank you both for your argument.
judges: Korman, Callahan, Watford